**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

IN RE:

**ANDREA L. GRANVILLE**                                                **CASE NO. 13-51923**
                                                                                                         **CHAPTER 13**
**DEBTOR**

**MEMORANDUM OPINION AND ORDER**

       This matter is before the Court on Debtor Andrea L. Granville's Motion Relating to Use of Insurance Proceeds and for Substitution of Collateral [Doc. 23], the Response to said motion filed by Creditor University of Kentucky Federal Credit Union (the "Credit Union") [Doc. 24] and the Debtor's Reply to the Creditor's Objection [Doc. 25]. The matter came on for hearing on February 6, 2014 after which the Court issued an Order requiring additional briefing by the parties [Doc. 28]. Pursuant to the Court's Order, the Credit Union filed its Supplemental Brief [Doc. 32], the Debtor filed her Reply Brief [Doc. 33] and the Chapter 13 Trustee filed her Memorandum [Doc. 34]. The parties also filed Joint Stipulations regarding the facts of the case [Doc. 31]. The matter was taken under submission upon completion of the parties' supplemental briefs according to the Court's scheduling order and the matter is now ripe for determination.

**A.**     **INTRODUCTION.**

       The Debtor owns a 2009 Kia automobile financed by the Credit Union. [Doc. 31, ¶ 2] The Debtor's car was totaled post-confirmation in an accident caused by a driver (the "Third Party") insured by State Farm Automobile Insurance Company ("State Farm"). [Doc. 31, ¶ 11] The Third Party's fault is evidenced by the willingness of State Farm to settle the claim for the car at $13,183.50 (the "Insurance Payment"). [Doc. 31, ¶¶ 11-12] The Debtor asserts the Insurance Payment represents property of the estate (*i.e.,* cash collateral) that it can use to

purchase a replacement vehicle that will remain subject to the lien of the Credit Union pursuant to 11 U.S.C. §§ 363(b) and (e). [Docs. 23 and 33]

The Credit Union objects, arguing the Insurance Payment is not property of the estate subject to 11 U.S.C. § 363(b) because the car vested in the Debtor pursuant to 11 U.S.C. § 1327(b) upon confirmation and the Insurance Payment, as proceeds of the car, remains with the Debtor. [Docs. 24 and 32] The Credit Union believes it should receive the Insurance Payment pursuant to its undisputed lien on the car and its proceeds. The Chapter 13 Trustee joins in to argue that the Insurance Payment is property of the Debtor's estate, but otherwise takes no position. [Doc. 34]

The central issue in this case is whether or not the Insurance Payment is property of the estate under 11 U.S.C. § 1306 and therefore subject to administration by the Court pursuant to § 363. The facts of this case are unique and do not give rise to a direct conflict between the definition of estate assets in § 1306 and the vesting provisions in § 1327.

**B.     THE INSURANCE PAYMENT IS PROPERTY OF THE ESTATE.**

Whether insurance proceeds are property of a debtor's estate is a fact-specific determination. *In re Sfuzzi*, 191 B.R. 664, 668 (Bankr. N.D. Tex. 1996) ("[T]he question of whether the [insurance] *proceeds* are property of the estate must be analyzed in light of the facts of each case." (emphasis in original)). For example, this Court has determined in another case that a debtor-husband's post-confirmation life insurance payment due to his surviving debtor-spouse was property of the estate pursuant to § 1306(a)(1). *See In re Sizemore*, No. 09-61064, 2013 WL 6328260, at *3 (Bankr. E.D. Ky. Dec. 5, 2013) (Doc. 138 – Memorandum Opinion and

Order). This statement is the only benefit to this holding, as the basis for the right to the Insurance Payment in this case is different.[1]

This case involves insurance proceeds paid after the Debtor's car was totaled in an accident caused by the Third Party. The Third Party has, therefore, committed a tort against the Debtor and the Debtor is entitled to compensation. The compensation is calculated as the value of the thing lost – the car. (This discussion ignores any injury to the Debtor.) The tort only became property of the estate under 11 U.S.C. § 1306 when the right to payment arose.

The fact that the Third Party's obligation is paid by State Farm does not change or affect this conclusion. State Farm is making the payment because of an agreement it has with the Third Party (an insurance policy). The Insurance Payment is still deemed to arise out of the actions of the Third Party and come from his obligation to the Debtor based on his negligent actions.

The answer is also unaffected by the identity of the ultimate recipient of the payment from Third Party, whether that payment is made directly or pursuant to an insurance agreement. The Debtor granted the Credit Union a security interest in the car and the Credit Union's lien attaches to any proceeds of the car by contract and statute. *See* [POC 1-1, p. 4]; KRS 355.9-203(6) and 355.9-315. Although the Insurance Payment exists because of the destruction of the car, it is not the same as the car. *See* KRS 355.9-315 ("A security interest attaches to any identifiable proceeds of the collateral", confirming the distinct nature of collateral and its proceeds.).

Given that the Debtor's acquisition of the proceeds occurred after confirmation of her plan, the vesting provision of § 1327(b) is of limited relevance to this dispute and the plain

---

[1] The unique facts of this case also mean this opinion does not need to address the "thorny issues of bankruptcy law" arising from the tension between § 1306(a)(1) and the vesting effect of § 1327(b). *See Kimberlin v. Dollar General Corp.*, 520 F.App'x 312, 314 (6th Cir. 2013). Further, this ruling is not an endorsement of any one of several competing approaches that have been developed by courts that have considered such issues.

3

language of § 1306(a)(1) controls. That provision includes as property of the estate, "all property of the kind specified in [§ 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under Chapter 7, 11, or 12 of this title, whichever occurs first." Thus, the Insurance Payment is property of the bankruptcy estate.[2]

### C.  THE DEBTOR'S REQUEST TO USE THE INSURANCE PAYMENT IS GRANTED.

Sections 363(b) and (e) allow use of property of the estate provided a secured creditor is adequately protected. The Debtor has requested permission to use the Credit Union's cash collateral (in the form of the Insurance Payment) to purchase a substitute vehicle. The Debtor will provide adequate protection to the Credit Union in the form of a first lien on a replacement vehicle. The relief requested by the Debtor is reasonable and is permitted by the Code.

The Trustee takes no position regarding the specific relief requested by the Debtor, but she does highlight the reason the Debtor needs this relief. "[G]enerally, if the Debtor needs transportation to/from work in order to earn the money necessary to fund the chapter 13 plan, and the vehicle is reasonable, the Trustee has no objection." [Doc. 34, p. 15] The record confirms this general statement is applicable in this case.

According to the Debtor's schedules [Doc. 1, p. 12] and brief [Doc. 33, p. 2], the totaled vehicle was her sole means of transportation. Under the circumstances, approving the Debtor's request may very well ensure her successful completion of the plan; denying such relief is likely to place financial pressure on the Debtor (whether through missed work or higher transportation costs) that will imperil her ability to continue plan payments. Therefore, as long as the Credit Union is adequately protected, the Debtor is entitled to the relief requested.

---

[2] This conclusion is consistent with the Memorandum Opinion and Order in *In re Kelley*, No. 11-51197, Doc. 92, p. 3 (Bankr. E.D. Ky. Nov. 8, 2012) (quoting Doc. 51), a case presenting similar facts.

Although it is hard to see how a replacement lien on a vehicle purchased with the Insurance Payment in an arms length transaction will not provide adequate protection, the Credit Union is entitled to some assurance that its secured claim is adequately protected. As set forth below, it is necessary for the Debtor to provide sufficient assurance that the price of the replacement vehicle is fair and that the Credit Union will have a first lien on the vehicle.

The Credit Union also argued that substitution of the collateral is an amendment to the Plan that is not contemplated by 11 U.S.C. § 1329. The requested relief is not an attempt to amend the Plan; the payments to the Credit Union will remain. The only affect of this order is to change the form of the collateral in a manner that is allowed by the Code. It is interesting to note that a finding that the Debtor could not substitute collateral would not automatically result in delivery of the cash collateral to the Credit Union. A lump sum payment to the creditor does seem to implicate § 1329, but only "the debtor, the trustee, or the holder of an allowed **unsecured** claim" may seek to amend the Plan.

### D.     CONCLUSION.

For the reasons set out herein, the Debtor's Motion Relating to Use of Insurance Proceeds and for Substitution of Collateral [Doc. 23] is GRANTED and the Credit Union's Response to Debtor's Motion Relating to Use of Insurance Proceeds and for Substitution of Collateral [Doc. 24] is OVERRULED. It is further ORDERED:

1. State Farm shall release the Insurance Payment to the attorney escrow account of the Debtor's counsel;

2. Debtor's counsel shall disburse the Insurance Payment to the Debtor for purchase of a replacement vehicle, provided:

5

    a. The Debtor shall give the Credit Union, through its counsel, not less than two business days notice of the vehicle the Debtor intends to purchase and the amount of the Insurance Payment she plans to use;

    b. The Debtor and Credit Union shall attempt in good faith to work out any disputes, but otherwise either party may request a hearing on shortened notice to address such disputes; and

    c. The transaction shall be is handled in a manner that will provide reasonable assurance the title for the vehicle will list the Credit Union as the first lienholder;

3. The Credit Union will continue to receive the payments required by the Plan; and

4. Any funds remaining in the possession of the Debtor after purchase of the substitute vehicle shall be returned to the Trustee for distribution to the Credit Union on its secured debt.

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Friday, April 04, 2014**
(grs)